If the ninth section of the Act of 1715 applied to heirs as well as executors, it could only have contemplated the barring of such debts as might then be recovered against the heir, — debts by specialty in which the heir was named. It was no bar in favor of devisees; for the statute making them liable had not at that time been enforced here. To be sure, the real estate has since been made liable to all just debts; but that circumstance can not enlarge the operation of a precedent act of the Legislature. And there is the less reason for saying so, as the common act of limitations, made *Page 8 
at the same session of the Legislature, barred all simple contract debts at the end of three years, with an exception in favor of the creditor under disabilities until a time specified after the removal of such disabilities. Why say the heir may plead that he was not sued in seven years, and at the same time say he may plead that he was not sued in three years? It might also be argued that the indefinite responsibility of an executor, though he had paid out the assets to legatees, which gave him no exemption from the action of a creditor, and left him exposed to answer de bonis propriis, though the securities of the legatee were all dead or insolvent, was the cause which induced the Legislature to limit such responsibility to seven years, and deliver him from a peril which did not affect the heir; therefore, that the limitation did not extend to him, and that he ought in justice to remain liable to the debt as long as his ancestor would have been had he lived. His real estate, being imperishable and immovable, could not be withdrawn from the heir as personalty in the hands of a legatee may from the executor, and therefore that the same reason for protecting the heir did not exist in 1715 as did for protecting the executor. Without resorting, however, to all these considerations, and without deciding whether this section did or did not apply to heirs, the question now before us may be settled.
The Act of 5 Geo. II. c. 7, made lands liable to all debts. The Act of 1777, c. 2, section 29, recognized the same law. The Act of 1794, c. 1, section 23, did so likewise. The Act of 1784, c. 10, provided the means of subjecting an heir in case of the death of an ancestor. The executor was to be first sued, and pleading no assets or fully administered, and having the same found for him, the creditor was then directed to pursue the heir by scire facias founded on that judgment. Thus the heir, with respect at least to all debts he was made liable to by the Act of Geo. II., could not be reached or *Page 9 
impleaded but through a judgment against the executor. When, therefore, a judgment can not be obtained by a creditor against the executor, the same debt also can not be recovered against the heir. For without a judgment against the executor, no sci. fa. can issue against the heir. Then the question descends to this point: Will the Act of 1789, c. 23, section 4, bar the creditor within the State from recovering against the executor at the end of two years after his qualification as executor? All admit that it will so bar, if the operation of the Act of 1789, c. 23, section 4, does not depend upon a previous advertisement by the executor, as required in sect. 5 of the same act. Then we descend to another question, Is the said fifth clause a conditional or only a directory clause? Consider for whose benefit is the limitation in sect. 4. The executor, whether he has advertised or not, after the end of two years may pay over to the legatees by sect. 2 and sect. 3 all the assets remaining in his hands, taking bonds payable to the chairman, and afterwards may pleadplene administravit to the action of a creditor. He is safe without the limitation contained in this act. The limitation, then, is in favor of the personal estate in the hands of the legatee, giving also a time for disabled creditors which is not allowed them by the Act of 1715. If this limitation is not to take effect unless the executor advertise, then one consequence is that the personal estate in the hands of the legatee will be exposed at least for seven years. The executor, without any risk to himself, may keep up the liability of the personal estate, by his neglect, five years longer than the legislature intended. On the other hand, the exception in this act is from the bar of two years established by it. Now if the bar does not take place, there can be no exception from it of particular cases of disability; and then the disabled persons intended to be provided for by the Act of 1789 will be at the mercy of the executors. If he chooses not to do his duty, and not to *Page 10 
advertise, they are placed under the Act of 1715, and are barred in seven years. If he chooses to do his duty and do advertise, then the disabled creditor may sue after the seven years, whenever the disability shall be removed. A construction that places both the legatee and the disabled creditor in the power of the executor, doing mischief to them by his failure and misconduct without any detriment to himself, can not be correct. The true construction must be that the fifth section of 1789, c. 23, sec. 5, is not a condition precedent, but directory to the executor. Should a creditor suffer for want of advertisement, that will be a matter to be adjusted between the wrong-doer and the sufferer; but not a matter to prejudice the innocent legatee or disabled creditor. If directory then the bar attaches whether advertisement be made or not. If so, then one consequence is, that a creditor, being barrable in two years by 1789, can not, by the intention of this act, be left under the Act of 1715, that only bars in seven. For why bar in seven, if barred in two? Why bar a feme covert or the like in seven, when not barred by 1789 till discoverture, though twenty years after the seven? Both are provisions upon the same subject, within the purview or body of 1789, and therefore the former or Act of 1715 seems to be repealed by the express words of 1789, c. 23, sec. 6. We then come to another reflection. If the creditor be barred as against the executor in two years, and can not after being barred pursue the heir, shall he, thus barred as against the personal estate, proceed against the heir by action, laying aside the sci. fa? Can he recover against the real estate after exempting the personal for ever by his delay, although the law directs, as a fundamental provision, that the personal shall be the primary fund? Shall he thus be allowed to overturn the established rules of law to suit his own purposes or caprices? If the creditor can not subject the *Page 11 
personal estate because of this limitation, shall he be allowed by circuity to turn the heir upon the personalty? C. 10; the bar is of no effect as to the personalty; for it may thus ultimately be subjected.
If this reasoning be correct, then can Pea recover against the heir? He may notwithstanding this plea of the seven years' act; for, if it ever could have been pleaded by the heir, it is perhaps not pleadable since the Act of 1789, and from the consideration of precedent. If barred by the common act of limitations so far as concerns the personal assets, the executor is not bound to plead it. But if he pay debts beyond his assets, to which he might have pleaded "fully administered," he is a volunteer, and stands in the place of the creditor against the heir, who can avoid the judgment by pleading a matter which shows that such judgment is unjust, or was barrable by plea when recovered against the executor. If the creditor could have been barred by the executor by the plea of this limitation, then he shall be barred now by the heir. If the creditor could not have been barred by such plea of the executor, neither shall he be barred now; for then the creditor might have obtained judgment and have proceeded against him. The executor, by payment, has precluded a judgment against himself by the creditor, and has extinguished the demand of the creditor; but thereby has not substantially placed the heir in a worse situation than he would have stood in had the judgment been obtained. It would, therefore, be unconscionable in the heir to withhold payment upon the ground of this informality, provided no substantial defence which he had before is taken from him. They ought both to stand in equity unembarrassed by the mistake, and upon the same footing as if judgment had been actually entered against the executor. In that case the heir who sued by sci. fa. could only show that the executor had assets, or could have barred the executor by the act of limitations; *Page 12 
which, if he could have done then, he may do now. And by this means may they both be discharged; the executor, in common cases, byplene administravit, and the heir by the act of limitations, which the executor might have pleaded, each will enjoy the advantages which the law gives him. After payment by the executor of any sum above his assets, he, as creditor of the heir, ought to bring his bill within the same time that the creditor was bound to bring hissci. fa. And as the sci. fa. is not limited by law, so neither is the bill, until time enough be lapsed to form a presumption of declaration.
But combine this reasoning with former decisions, and how stands the law? The result is that neither of these defences is wholly good. One being founded in part upon not suing within seven years after the death of the intestate, so far it is incorrect; for suit is not required by the words of the seven years' act, though claim is and so far the defence may upon precedent be valid. The other plea is, that the intestate did not assume within three years; the meaning must be next before filing the bill. It ought to have been next before the payment by the administrator of the debt now demanded.
If the Act of 1715, so far as concerns executors, be repealed by that of 1789, then the existence of the clause in 1715 in favor of heirs would be injurious to them; for after the creditor was barred as to the executor in three years or two years, as the case might be, still he might sue the heir and subject the realty: I mean, supposing the fifth section credited, and an advertisement to have been made. If not repealed by 1789, then the creditor may be barred before the debt become due after seven years, or if it become due so late within the seven years that he has not time to recover first against the executor and then against the heir.
If the opposite construction be correct, then the *Page 13 
disabled creditor will be barred as to the heir in seven years, though at liberty to sue the executor after the lapse of twenty or thirty years, and, being then repelled by the plea of administravit
can not resort to the heir. And thus the realty will be exonerated; at the same time that the personalty, so long as there is any, will continue liable, — a difference certainly never intended.
The creditor, under the opposite construction, may sue the executor if he qualify after the end of seven years, though the realty at the end of seven years he wholly discharged; the executor being liable to a debt becoming due after seven years, because of the equitable construction which may be given to a statute with exceptions, as the Act of 1789 is at the same time that the heir is completely discharged, because the Act of 1715 is not capable of such equitable construction.
Why is the advertisement of such consequence? Those within the district or county will hear of the death as soon as of the advertisement; and those beyond the county or district will often hear of the death much sooner than of the advertisement. It is hardly supposable that any one will get notice by the advertisement who would not get without; and yet, immaterial as it is, the act. by the opposite construction, is made to be of no effect without it.
But, indeed, if the section in question must now be taken as applicable to heirs, then what are its words? The Act of 1715, c. 48. section 0, is in these words: "Creditors of any person deceased shall make their claim within seven years next after the death of such debtor, otherwise such creditor shall be for ever barred." Now what is meant by the word claim both at the common law and under our Acts of Assembly 1715, c. 27, section 3; 1797, c. 43, section 4; 1789, c. 23, section 4? It is a demand, or making known, of the demand, to the person who is subject to it, within *Page 14 
seven years, to the end that, being apprised of the debt, he may provide for its payment. An action is not requisite. Verbally preferring the demand is enough. Suing the executor is notice enough to the heir. Lis pendens in a superior court is notice to a purchaser, because of its notoriety. A judgment against the testator is notice to the executor. Why not suit against the executor notice to the heir? It is the pendency of the suit in the case of the purchaser that creates the notice. 2 C. D. Chancery, Verbo Notice. We are not bound to go beyond former decisions; and to say that claim means action. If stated in a plea which is set down to be argued, the statement must be taken as true. If in an answer, then, by a replication, the plaintiff should be at liberty to prove the claim or notice. What we have now before us is to say whether, if such claim or notice be proved, the bar will thereby be prevented.
I can not believe it proper to introduce an act of limitations for an heir not named in any part of it, and then to bar the demands against him by stretching words beyond their usual signification. The Act of 1789 required the creditor not only to demand but also to bring suit; so did the Act of 1797. The expression there is legal claim by suit in law. The Act of the 4th of Anne c. 16, section 16, declares that no claim shall be sufficient within the act of limitations of 21 James I, c. 16, unless an action shall be commenced within one year after the making of such claim. A broad road of distinction is made between claim and action at the common law, as well as by the British statutes and our own. Let it remain; let us not break it down, for by so doing we shall bring confusion and error into the interpretation of such of the acts as have used the term in its legal and established sense.
The conclusion is, that, if there was no claim in seven years, this suit is barred; but if there was a claim within seven years, then it is not barred. Claim *Page 15 
in the Act of 1715, c. 48, section 9, means a verbal, written, or other intimation of the demand, either express, or by some distinct communication that the debt exists.
Let this part of the answer, therefore, stand for proof of the claim if it can be made.